37950.   HUIET, Commissioner *v.* RHODES *et al.*

Decided February 16, 1960—Rehearing denied March 8, 1960.

254

*Otis L. Hathcock, Dean J. Ratliffe,* for plaintiff in error.

*Adair & Goldthwaite, J. R. Goldthwaite, Jr.,* contra.

TOWNSEND, Judge. The only question in this case is whether there is any evidence to support the finding of the appeals referee as affirmed by the board of review that the last week in December had been designated as a vacation period, the judge of the superior court having been of the opinion that there was no such evidence.

It is undisputed that the employees of Cordele Casualwear

Corporation did not take advantage of the second week of their vacation in July, 1957, and therefore the vacation week pay would be due and payable to them on the last week in December, 1957, unless other arrangements had been entered into. It is undisputed that in December, 1957, there was a work stoppage and they were laid off prior to the week of December 23, and were not working, due to the layoff, which had commenced in November, 1957, and increased progressively until by December 20th, nearly all the employees were unemployed and would have been unemployed in any event. It is undisputed that the parties, labor and management, entered into a stipulation before the board of review to the effect that neither of them had designated any week in December, 1957, as a week of vacation. It is undisputed that under the employment contract the employees were entitled to two weeks' vacation in July; that they voted to work during one of the weeks designated as the vacation period; that under the contract they were accordingly entitled to double wages for the week in which they worked which was also a vacation week *unless* they agreed affirmatively to take the vacation week at some other time. It is undisputed that at the time of the hearing both the employees and the company maintained the position that the payment received for the last week in December was not vacation pay for that week, but was accrued vacation pay to which the employees were entitled whether they worked that week or not. This stipulation, of course, would not bind the State if other affirmative evidence in the record showed it to be untrue, but, under the contract, the state of facts shown by the stipulation was required under the provisions of the unemployment contract, in the absence of proof of an agreement between both parties, to substitute some other week for vacation period in place of the vacation week in July which had not been received by the employees.

To uphold its position that there was a mutual agreement in fact existing between the parties to designate the week of December 23, as the second vacation week in lieu of the week specified in the contract, the testimony of Mrs. Matthews, a union representative was relied on by the referee in his decision. She testified: "I think that we were all confused at that meeting, but I did not agree to split vacation. I told Mr. Herring that I thought the

point that he was bringing out why we wouldn't get our bonus because we worked that second week in July, that was supposed to be our vacation, but nothing was said about a split vacation." This testimony is not contradicted; accordingly, Mrs. Matthews' testimony that she told the workers to "turn in" the amount received for the week of December 23, as a bonus or vacation pay, merely shows that Mrs. Matthews was of the opinion that the payment was vacation pay, which it was. Mrs. Matthews did not understand the amount to be vacation pay specifically for the week of December 23, and it was not vacation pay for that week. It was vacation pay for the week of the July vacation. It was received in the week of December 23, because that was the last week of the calendar year and the money was owing at that time. Neither Mrs. Matthews nor any other union representative nor any company representative designated the week of December 23, as a vacation week, and in the absence of an agreement between both parties that it was so, the fact that the claimant turned it in as for that week did not estop the claimant from showing that it had not been intended by either party to the contract as wages *for that* week, instead of for the July vacation week. Mrs. Matthews' testimony is itself so vague and confused that the only conclusion to be drawn is that she had no understanding at all of the point at issue. There is no other testimony in the record to show any agreement at all between labor and management designating the week of December 23, as a vacation week instead of a part of the layoff period then in progress. Under the terms of the contract between labor and management that week or any week (other than the weeks in July mentioned in the contract) could not become a vacation week without a definite agreement to that effect between the parties.

It follows that the judge of the superior court did not err in reversing the judgment of the board of review.

*Judgment affirmed. Gardner, P. J., and Carlisle, J., concur.*